UNITED STATES *v.* CHAS. J. WEBB SONS CO. (INC.) (No. 2979[1])

United States Court of Custom Appeals, May 21, 1928

*Charles D. Lawrence,* Assistant Attorney General (*Marcus Higginbotham,* special attorney, of counsel), for the United States.

*Theodore L. Bailey* (*Arthur E. Muller* of counsel) for appellee.

[Oral argument December 13, 1927, by Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:.

On November 13, 1922, the S. S. *Hoosac* arrived at the port of Philadelphia. Two bales of wool imported by appellee on said vessel were lost overboard while being discharged from same.

The inspector's return on the back of the warehouse permit, made November 18, 1922, recites:

| | |
|---|---|
| To bond_____ | 149 bales |
| To appraiser's stores_____ | 6 bales |
| Overboard in course of discharge_____ | 2 bales—Not recovered |
| | 157 bales |

---

[1] T. D. 42790.

The merchandise involved warehouse entry No. 2287, which was liquidated on the basis of 157 bales on August 14, 1923.

On or about November 16, 1925, the collector demanded duty on the two bales which had been lost, and the same was duly paid by appellee.

On October 8, 1926, appellee gave notice in writing to the collector, asking for a refund of the duties paid on the two bales. The notice was received by the collector on October 13, 1926.

The court below rendered judgment in favor of appellee for the abatement of duty to the extent of the per centum of the injury reported by the inspector, and directed the collector to act in accordance therewith.

From the judgment of the court below the United States has appealed to this court and contends here that the decision of the court below is erroneous in so far as it should have dismissed the claim or denied the same upon the ground that it was not filed within the statutory period provided for in the Tariff Act of 1922.

The Government urges that sections 514 (protest of duties) and 521 (reliquidation of duties) of the act should be read in connection with section 563 (allowance for loss) and that when so read appellee has failed to bring itself within the time limitations prescribed by the statute.

The importer, appellee, argues that section 563 is entirely separate and distinct from sections 514 and 521, and that there is no time limit within which the notice in writing for abatement or allowance of duty, as provided for in section 563, must be given. Importer further points out that section 521 could not have been intended as a statute of limitations on the rights granted in section 563, since in cases of goods in warehouse liquidation often precedes the withdrawal of goods by three years, and if the goods are lost while in warehouse within three years from entry a petition for loss will be entertained.

It is also pointed out that section 514 (the protest section) can not be a limitation upon section 563, for the reason that in section 514 the action to be challenged by protest is the action of the collector, whereas section 563 provides not for action by the collector but for a determination by the Board of General Appraisers.

The applicable portions of sections 514, 521, and 563 of the Tariff Act of 1922 are as follows:

SEC. 514. PROTEST.—All decisions of the collector, including legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs revenue laws, and his liquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the

date of entry, or within sixty days after liquidation when liquidation is made more than ten months after the date of entry, shall be final and conclusive upon all persons, unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation or decision, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, or decision, the reasons for the objection thereto, and if the merchandise is entered for consumption shall pay the full amount of duties, charges, and exactions ascertained to be due thereon. Under such rules as the Board of General Appraisers may prescribe, and in its discretion, a protest may be amended at any time prior to the first docket call thereof.

SEC. 521. RELIQUIDATION OF DUTIES.—Whenever any merchandise has been entered and passed free of duty, and whenever duties upon any imported merchandise have been liquidated and paid, and the merchandise has been delivered to the consignee, or his agent, such entry and passage free of duty and such settlement of duties shall, after the expiration of one year from the date of entry, or after the expiration of sixty days after the date of liquidation when liquidation is made more than ten months after the date of entry, in the absence of fraud and in the absence of protest by the consignee, or his agent, or by an American manufacturer, producer, or wholesaler, be final and conclusive upon all parties. If the collector finds probable cause to believe there is fraud in the case, he may reliquidate within two years after the date of entry, or after the date of liquidation when liquidation is made more than ten months after the date of entry.

SEC. 563. ALLOWANCE FOR LOSS—ABANDONMENT.—In no case shall there be any abatement or allowance made in the duties for any injury, deterioration, loss, or damage sustained by any merchandise while remaining in a bonded warehouse: *Provided,* That upon the production of satisfactory proof to the Board of General Appraisers of actual injury or destruction, in whole or in part, of any merchandise, by accidental fire or other casualty, while in bonded warehouse, or in the appraiser's stores undergoing appraisal, or while in transportation under bond from one port to another, or while in the custody of the officers of the customs, although not in bond, or while within the limits of any port of entry, and before the same has been landed from the importing vessel or vehicle, such board is hereby authorized to order an abatement or refund, as the case may be, and the Secretary of the Treasury is authorized to pay, out of any moneys in the Treasury not otherwise appropriated, the amount of duties paid. Notice in writing shall be filed with the collector of the district in which such actual injury or destruction was sustained or occurred, and the collector shall transmit such notice together with all papers and documents to the board for due assignment and determination, and such determination shall be final and conclusive upon all persons interested therein except in cases where an appeal may be filed by either party in the United States Court of Customs Appeals within the time and in the manner provided by law: * * *.

If the contention of appellee is correct that there is no time limit fixed by the Act of 1922 within which the notice provided for in section 563 must be filed it follows that it could be legally filed within 10 years from the time of loss, unless otherwise barred by law. The particular sections quoted, the act as a whole, and the history of this kind of legislation are convincing that no such right was intended by Congress.

Section 557 provides, among other things, that the total period of time during which merchandise may remain in a bonded warehouse shall not exceed three years. Section 559 provides that merchandise remaining in a bonded warehouse beyond three years from the date of importation shall be regarded as abandoned.

In *United States* v. *Isler & Guye*, 13 Ct. Cust. Appls. 485, T. D. 41369, this court held as follows:

> The Tariff Act of 1922 granted to the importer liberal rights which he had not previously enjoyed in connection with the recovery of duties paid upon goods which had been damaged or destroyed by accidental fire or casualty in bonded warehouse and elsewhere. Congress clearly had the right to fix a limit of time within which this privilege could be exercised, and, while it did not definitely fix the limit in section 563, it provided definitely in the act that three years was the limit for goods to remain in bonded warehouse. In section 563, under which appellees' claim is filed, it was stated, in effect, that after three years they could not abandon their goods to the Government and be relieved of the payment of duties. Surely, if Congress intended that an importer should not have the right to abandon his goods to the Government and have an abatement of duty if he left them in warehouse more than three years, it did not intend that if the goods were destroyed by fire after they had been warehoused three years, and thereby abandoned, such importer would have the right to have his duties abated.

The Government contends that the above decision is decisive of the issues involved in the case at bar. In that connection it may be pointed out that in the *Isler* case, *supra*, the goods had been in a bonded warehouse for a period of more than three years before their destruction, whereas in the case at bar the goods under dispute, while intended for warehousing, were never, in fact, placed in the warehouse. The *Isler* case, in our judgment, is not directly decisive of the issue involved herein, and may be said to support the Government's position only in so far as it does; in effect, declare a time limit for the particular facts of that case.

It can not be said that the collector's demand for the payment of the duty was a reliquidation. This court, in *United States* v. *Andrews & Co. (Inc.)*, 14 Ct. Cust. Appls. 62, T. D. 41576, in an opinion by Presiding Judge Graham, said:

> The demand of the collector upon the importer for duties under date of September 5, 1922, was nothing more than a communication to the importer in the course of the administration of the business of the collector's office and can not be (under the authority of the cases hereinbefore cited) taken as "exactions of whatever character," as mentioned in said paragraph N.

We do not think that sections 514 and 521 place a time limit upon the provisions of section 563, and we know of no such statutory limitation. Certainly, no provision of law, other than the two sections, supra, suggested by the Government, is claimed by anyone in the case to have such effect.

At the end of the Government's brief the question of laches on the part of appellee is referred to briefly, without citation of authority.

Very little was said on the subject by counsel on either side in oral argument before us. The principle of law is well settled that neglect, for an unreasonable or unexplained length of time, under circumstances permitting diligence, to do what in law should have been done charges the one so acting with laches and implies a waiver of such legal rights as have been so neglected. See Corpus Juris 21, p. 210, and cases cited.

If the contention of the importer that there is no express statutory limitation within which the notice must be filed was conceded to be correct, the redress which it seeks to obtain, and which the statute gave it, certainly should have been sought within what was a reasonable length of time, under all the circumstances. A failure to seek redress within a reasonable time would result in what has been styled by the courts as "negligence in the assertion of a right," "unreasonable delay in the enforcement of a known right," and would be a bar to recovery. See *Riley* v. *Blacker*, 51 Mont. 364; 152 P. 758; *State* v. *Brooks-Scanlon Lumber Co.*, 122 Minn. 400; 142 N. W. 717; *Mathieson* v. *Craven*, 247 Fed. 223.

The invoice entry in this case shows 157 cases and that on August 14, 1923, more than three years prior to the giving of notice for abatement, the collector liquidated upon 157 cases, as was his duty, regardless of the report of the shortage by the inspector, since it is specifically provided in section 563 that the importer's remedy for loss, under the section, shall be determined by the Board of General Appraisers (now United States Customs Court). As far as appears in the record the importer was at liberty, immediately upon the ascertainment of his loss, to have proceeded under the section, and certainly the liquidation of the collector should have been to it a forceful reminder that he was proceeding to collect duty on 157 cases. The importer waited for more than three years after liquidation and when he was called upon for payment attempted to assert his right.

If this question had been raised in the court below, we do not know what additional facts might have been shown which would have had a bearing upon the question of whether the delay was excusable or otherwise. The record before us does not show that this contention was called to the court's attention, or that the court considered it, or, for that matter, that the appellee had any knowledge that such a question was ever to be raised.

Under the circumstances of the case we do not feel justified in reversing the court below, on the ground of laches on the part of appellee, and the judgment of the United States Customs Court is *affirmed*.

HATFIELD, J., concurs in the conclusion.

CONCURRING OPINION

BARBER, Judge: I concur in the conclusion in this case. Nothing is disclosed, however, that to me suggests that the doctrine of laches is available as a defense to the importer's claim.

In *Kellogg* v. *Moore*, 271 Missouri 189, 196 S. W. 15, one of the many cases cited in Corpus Juris 21, page 210, referred to in the main opinion, among other things it is said that the reason for the defense of laches

is in general to exact of the complainant fair dealings with his adversary, and the rule was adopted largely because after great lapse of time from death of parties, loss of papers, death of witnesses, change of title, intervention of equities, or other causes, there is danger of doing injustice, and there can be no longer a safe determination of the controversy.

In *Wilder's Executrix* v. *Wilder*, 82 Vt. 123, 72 Atlantic 203, also cited in Corpus Juris, it is said:

Laches also involves prejudice, actual or implied, resulting from the delay. It does not arise from delay alone, but from delay that works a disadvantage to another.

To which statement numerous cases are cited.

In *State* v. *Brooks-Scanlon Lumber Co.*, cited in the main opinion, it is said:

The pith and substance of the doctrine of laches is unreasonable delay in enforcing a known right.

I am unable to see, if the above principles be applied, how the Government could claim that the importer was guilty of laches in this case.

A great number of cases might be cited in the discussion of this question. My purpose, however, is to very briefly call attention to the doubt I have as to the availability of the defense of laches under the facts in this case.