**FOODCOMM INTERNATIONAL, INC., Plaintiff,**

v.

**Michael KANTOR, United States Trade Representative, et al., Defendants.**

**Slip Op. No. 95–79.
Court No. 95–04–00385.**

United States Court of
International Trade.

April 28, 1995.

Baker & McKenzie, Washington, DC (William D. Outman, II), for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice (Jeffrey M. Telep); Dan Brinza, Office of the Gen. Counsel, U.S. Trade Representative, and Edward N. Maurer, Office of the Asst. Chief Counsel, Intern. Trade Litigation, U.S. Customs Service, Washington, DC, of counsel.

## OPINION

TSOUCALAS, Judge:

On April 13, 1995, pursuant to Rule 65(b) of the Rules of this Court, Foodcomm International Inc. ("Foodcomm") requested, and this Court granted, a temporary restraining order. Plaintiff sought to enjoin the continuing liquidation of entries of veal from the Netherlands and the continuing retroactive assessment and collection by the United States Customs Service of 100 percent tariff duty on previously liquidated entries of veal from The Netherlands. Concurrently with the issuance of the temporary restraining order, the Court scheduled a hearing on plaintiff's motion for a preliminary injunction.

Subsequently, on April 25, 1995, a full hearing was held to determine whether a preliminary injunction should issue. Pursuant to Rule 65(a) of the Rules of this Court, Foodcomm filed a motion requesting a preliminary injunction to enjoin the United States Trade Representative ("USTR") and the U.S. Customs Service ("Customs") from imposing a 100 percent tariff duty on entries of boneless veal from The Netherlands during the pendency of the litigation against the Secretary of the Treasury regarding the same conduct and any appeal thereof.

Defendants move for dismissal pursuant to Rules 12(b)(1) and (5) of the Rules of this Court for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

### Background

In 1985, the European Union ("EU") issued its "Council Directive Prohibiting the Use of Livestock Farming of Certain Substances Having a Hormonal Action" ("Directive") which prohibited imports into the EU of any meat produced from animals treated with growth hormones. In 1987, the President of the United States responded to that directive by issuing Presidential Proclamation 5759 which subjected "beef, without bone (except offal), fresh, chilled, or frozen (provided for in subheadings 0201.30.60 and 0202.30.60) of the Harmonized Tariff Schedule ("HTS")" from the EU to duties of 100 percent, as prescribed in subheading 9903.23.00. *Proclamation 5759 of December 24, 1987, Increasing the Rates of Duty on Certain Products of the European Community* ("Proclamation") 52 Fed.Reg. 49,131, (December 30, 1987). Prior to the Proclamation, beef without bone was subject only to a duty of 4.4 cents per kilogram.

The Proclamation also authorized the USTR to suspend, modify, or terminate the suspension of the increased duties upon publication in the Federal Register of his determination that such action is in the interest of the United States. *Id.* at 49,132.

In February 1994, the United States recognized that The Netherlands was free of foot and mouth disease and, as a result, Foodcomm began importing boneless veal from The Netherlands, a member state of the EU, under subheading 0201.30.60 of the HTS, the same subheading as the one addressed by the Proclamation. From June 1994 to November 1994, plaintiff made entries of boneless veal through the ports of San Francisco and Boston. These entries are the subject of this action.

Import specialists were in disagreement as to the application of the Proclamation: some applied it to boneless veal and some did not. At the request of another importer of boneless veal, Customs issued a ruling letter on October 6, 1994 in which it held that boneless veal is subject to 100 percent duties pursuant to HTS item 9903.23.00. Customs did not consult the USTR before issuing this decision. (In March of 1995, Customs consulted with the USTR and affirmed its earlier ruling.)

On December 5, 1994, after consulting with the USTR, Customs issued administrative instructions ("Customs Instructions") pursuant to which all shipments of boneless veal from the EU are to be assessed with 100 percent duties under HTS subheading 9903.23.00. The Customs Instructions also required ports to retrieve entries liquidated within the past 90 days and to reliquidate them with the 100 percent duty. Finally, the Customs instructions required all ports to issue notices of rate advance on entries of boneless veal upon which liquidation was pending.

On December 12, 1994, plaintiff received two notices of action proposing to increase the rate of duty for importations of boneless veal. Plaintiff responded on December 29, 1994, arguing that because veal is not beef, boneless veal from The Netherlands should be excluded from the imposition of 100 percent duties under HTS 9903.23.00. On March 14, 1995, the Director of the Commercial Rulings Division, United States Customs Service denied plaintiff's petition for relief.

On December 30, 1994, Customs liquidated 20 of plaintiff's entries made through the port of San Francisco between June and August 1994. Plaintiff paid the bills issued with respect to these entries on January 27, 1995.

On March 17, 1995, Customs liquidated another 10 entries made through the port of San Francisco with the 100 percent duty and issued bills for the additional duties in the amount of approximately $200,000. According to the bills, the full amount of the additional duties was due on or before April 15, 1995, with interest accruing for late payment from that date.

On March 27, 1995, plaintiff protested the liquidation of the entries made through San Francisco. Customs has not yet decided these protests.

On April 7, 1995, Customs liquidated the 24 entries made through the port of Boston. Bills for the Boston entries have been sent to plaintiff.

In sum, Foodcomm has paid Customs $230,888.43 in duties on boneless veal which has entered the United States prior to December 1994 and Customs has informed Foodcomm that it owes an additional $196,-747.68 in duties for entries at San Francisco and $548,747.68 in duties for entries at Bos-ton. The charges assessed by Customs include interest charged at a compounded rate of nine percent which has been accrued as of October 1, 1994. *Memorandum of Law in Support of Plaintiff's Application for a Temporary Restraining Order and a Preliminary Injunction* at 4.

On April 7, 1995, Foodcomm filed the complaint in this action.

### Discussion

*Jurisdiction*

Foodcomm carries the burden of demonstrating that the Court of International Trade has jurisdiction to hear and determine this case. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Smith Corona Group, SCM Corp. v. United States*, 8 CIT 100, 102, 593 F.Supp. 415, 417–18 (1984). Plaintiff asserts that the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1581(i) (1988).[1] Specifically, Foodcomm claims that jurisdiction exists under subparagraphs (1), (2) and (4) of this provision.

Defendant contests the court's jurisdiction, asserting that plaintiff has neither exhausted the administrative remedies available nor demonstrated that the Court has jurisdiction under section 1581(i). For the reasons set out below, this Court agrees with defendant that it does not have jurisdiction to hear this case.

Section 1581(i) is a residual jurisdictional provision which grants exclusive jurisdiction to the Court of International Trade to hear issues which are not specifically covered by other subparagraphs of section 1581. This section may be invoked as a basis for subject matter jurisdiction where no other subsection of section 1581 is available or when the reme-

---

1. Section 1581(i) states, in part, as follows:

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)-(h) of this section.

28 U.S.C. § 1581(i) (1988).

dies afforded by the other subsections would be "manifestly inadequate." *See Asociacion Colombiana de Exportadores de Flores (Asocoflores) v. United States,* 13 CIT 584, 717 F.Supp. 847 (1989), *aff'd,* 903 F.2d 1555 (Fed. Cir.1990). *See also Miller & Co. v. United States,* 824 F.2d 961, 963 (Fed.Cir.1987), *cert. denied,* 484 U.S. 1041, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988).

Generally, challenges to classification, valuation and entry of merchandise are reviewable pursuant to 28 U.S.C. § 1581(a)[2] after the administrative remedies afforded by 19 U.S.C. §§ 1514[3] and 1515[4] have been exhausted. *United States v. Uniroyal, Inc.,* 69 CCPA 179, 182, 687 F.2d 467, 471 (1982) ("Congress did not intend the Court of International Trade to have jurisdiction over appeals concerning completed transactions when the appellant had failed to utilize an avenue for effective protest before the Customs Service.").

The denial of a protest is not a condition precedent to this court's exercise of jurisdiction in all cases. Where a plaintiff challenged a Presidential Proclamation imposing quotas on sugar imports, the Court of Customs and Patent Appeals held:

> We are persuaded that in this case, involving the potential for immediate injury and irreparable harm to an industry and a substantial impact on the national economy, the delay inherent in proceeding under § 1581(a) makes relief under that provision manifestly inadequate and, accordingly, the court has jurisdiction in this case under § 1581(i).

*United States Cane Sugar Refiners Ass'n v. Block,* 69 CCPA 172, 175 n. 5, 683 F.2d 399, 402 n. 5 (1982); *see also Mast Industries, Inc. v. Regan,* 8 CIT 214, 221, 596 F.Supp. 1567, 1573 (1984) (quoting *United States Cane Sugar Refiners,* 69 CCPA at 175 n. 5, 683 F.2d at 402 n. 5).

In contrast, in the case at bar, plaintiff has not demonstrated that the remedy available under section 1581(a) is manifestly inadequate. In his affidavit, the president of Foodcomm, Mr. Joel Weinstein, asserts Foodcomm's 1994 profits and available cash would be wiped out and its ability to borrow money diminished if Customs is not enjoined from imposing the duty. *Affidavit of Joel Weinstein, Foodcomm International, Inc.* at 3. Mr. Weinstein states the assessment of duties would devastate Foodcomm's sales because, once it becomes economically infeasible for it to import boneless veal, its sales of bone-in veal would be cut as customers will only buy boneless and bone-in veal from the same source. *Id.* Mr. Weinstein also asserts Foodcomm's ability to maintain itself as a growing business concern and its business goodwill are threatened. *Id.* at 4.

The Federal Circuit has held, "mere allegations of financial harm, or assertions that an agency failed to follow a statute, do not make the remedy established by Congress manifestly inadequate." *Miller & Co.,* 824 F.2d at 964. Foodcomm has failed to provide any financial information showing its financial solvency depends upon a preliminary injunction. The Court has seen no evidence that Foodcomm's goodwill or viability as a growing concern is threatened: Foodcomm is not limited to importing veal (be it boneless or in-bone) from only The Netherlands. The mere allegations of Mr. Weinstein do not amount to a finding of manifest inadequacy of the remedy available under section 1581(a). Indeed, on March 27, 1995, Foodcomm protested the liquidation of the entries made through San Francisco.

Foodcomm cannot demonstrate that the remedy afforded by section 1581(a) is manifestly inadequate merely by claiming that it is too costly to pay the duties required as a jurisdictional prerequisite by 28 U.S.C. § 2637(a) (1988). In addition, anticipated delays alone in obtaining a decision on a protest cannot establish that section 1581(a) provides

---

2.    § **1581. Civil actions against the United States and agencies and officers thereof**
(a) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.

28 U.S.C. § 1581(a) (1988).

3.  19 U.S.C. § 1514 (1988) pertains to protests against decisions of appropriate customs officers.

4.  19 U.S.C. § 1515 (1988) addresses the review of customs related protests.

a manifestly inadequate remedy. 19 U.S.C. § 1515(b) allows an importer to request accelerated disposition of its protest. In sum, that prompt resolution of this controversy was not possible or that plaintiff must pay duties as a jurisdictional prerequisite does not make an adequate basis for invoking the Court's residuary jurisdiction.

Although this Court is inclined to agree with plaintiff's argument that the Proclamation is a retaliatory measure in response to the EU Directive and therefore is a tariff "for reasons other than the raising of revenue" pursuant to 28 U.S.C. § 1581(i)(2), this Court finds the remedy available under 28 U.S.C. § 1581(a) is *not* manifestly inadequate as the plaintiff may request an accelerated disposition of its protest pursuant to 19 U.S.C. § 1515(b) and request an immediate trial of this Court.

Therefore, this Court holds it does not have jurisdiction to hear this case and defendants' motion to dismiss this action for lack of jurisdiction is granted. Accordingly, the temporary restraining order is hereby revoked and this case is dismissed.

### JUDGMENT

Upon consideration of plaintiff's motion for a preliminary injunction, defendants' opposition thereto, the hearing held on April 25, 1995, and all other papers and proceedings, in accordance with the decision rendered herein, it is hereby

**ORDERED** that plaintiff's motion for a preliminary injunction is denied in all respects; and it is further

**ORDERED** that defendants' motion to dismiss for lack of jurisdiction is granted; and it is further

**ORDERED** that the temporary restraining order issued on April 13, 1995 is revoked; and it is further

**ORDERED** that this case is dismissed.