**FOODCOMM INTERNATIONAL,**
**Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

**Slip. Op. 95–202.**
**Court No. 95–05–00734.**

United States Court of
International Trade.

Dec. 13, 1995.

Baker & McKenzie, William D. Outman, II, Washington, DC, for plaintiff.

Frank W. Hunger, Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Amy M. Rubin, New York City, of counsel: Edward N. Maurer, Attorney, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service, for defendant.

## OPINION

TSOUCALAS, Judge:

Plaintiff, Foodcomm International ("Foodcomm"), moves pursuant to Rule 56 of the Rules of this Court for summary judgment on the ground that there is no genuine issue as to any material facts. Defendant cross-moves for summary judgment seeking an order dismissing this case.

Plaintiff challenges the denial of Protest No. 280995–100425 by the United States Customs Service ("Customs"). The issue presently before the Court is whether Customs properly classified the merchandise, fresh or chilled boneless veal from The Netherlands, as beef without bone pursuant to subheading 9903.23.00 of the Harmonized Tariff Schedule of the United States ("HTSUS"). The entry numbers at issue are 304–0072456–0, 304–0072512–0, 304–0072711–8, 304–0072635–9, 304–0072753–0, 304–0072818–1, 304–0072892–6, 304–0072980–9, 304–0073113–6, 304–0073186–2, 304–0073265–4, 304–0073365–2, 304–0073440–3, 304–0073559–0, 304–0073649–9, 304–0073607–7, 304–0073933–7, 304–0073715–8, 304–0073779–4, 304–0076710–6 and 304–0072290–3.

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988).

### Background

Plaintiff imports meats and meat by-products through the ports of Boston and San Francisco. In December 1985, the European Community, which is now known as the European Union ("EU"), adopted the "Council Directive Prohibiting the Use in Livestock Farming of Certain Substances Having a Hormonal Action" ("Hormone Directive"). The Hormone Directive, which became effective on January 1, 1988, prohibited imports into EU member countries of any meat produced from animals treated with growth hormones. *See Unfair Trade Practices; European Community Hormones Directive*, 52 Fed.Reg. 45,304 (1987).

On December 24, 1987, pursuant to section 301(a) of the Trade Act of 1974, as amended, 19 U.S.C. § 2411 (1987), the President of the United States issued a Presidential Proclamation in response to the Hormone Directive. *Proclamation 5759 of December 24, 1987 ("Proclamation")*, 52 Fed.Reg. 49,131 (1987). In retaliation for the Hormone Directive, the Proclamation increased the rate of duties on certain products of the EU. As a result of the Proclamation, "[b]eef, without bone (except offal), fresh, chilled, or frozen (provided for in subheadings 0201.30.60 and 0202.30.60 [of HTSUS])" from the EU became subject to duties of 100% *ad valorem* as prescribed in subheading 9903.23.00 of the HTSUS. *Proclamation*, 52 Fed.Reg. at 49,-133.

In February, 1994, the United States Department of Agriculture ("USDA") recognized The Netherlands as being free of foot

and mouth disease. As a result, from June, 1994 to November, 1994, plaintiff imported boneless veal from The Netherlands through the ports of San Francisco and Boston. *Memorandum of Points and Authorities by Foodcomm International in Support of Plaintiff's Motion for Summary Judgment* ("*Plaintiff's Brief*") at 6. Plaintiff paid the general tariff duty rate of 4.4¢ per kilogram pursuant to subheading 0201.30.6000 of the HTSUS. *Id.* On December 5, 1994, Customs issued Directive 5339071 requiring subheading 9903.23.00, HTSUS, to be applied to all boneless beef, including boneless veal, which is the product of the EU. *Plaintiff's Brief*, Exhibit 6.

On December 6, 1994, plaintiff imported a shipment of boneless veal from The Netherlands at the port of San Francisco under entry number 304–0076710–6. *Plaintiff's Brief* at 6. On December 12, 1994, Customs issued a Notice of Proposed Action proposing to raise the duty imposed on veal imported from The Netherlands from the rate of 4.4¢ per kilogram, as provided for under subheading 0201.30.6000, HTSUS, to a rate of 100% *ad valorem* under subheading 9903.23.00, HTSUS. *Plaintiff's Brief*, Exhibit 7. Plaintiff responded to this notice on December 29, 1994, arguing that "there is absolutely no underpinning for the presumption that veal is included, as a matter of pure tariff classification, within the term 'beef.'" *Plaintiff's Brief*, Exhibit 8 at 3. Nevertheless, on December 30, 1994, Customs liquidated twenty entries of boneless veal from The Netherlands made through the port of San Francisco between June, 1994 and August, 1994 at the duty rate of 100%.

Customs issued Headquarters Ruling Letter 957419 on March 13, 1995, holding that "[b]oneless veal other than that considered processed … is classifiable in subheading 0201.30.6000, [HTSUS], if fresh or chilled, or subheading 0202.30.6000, [HTSUS], if frozen." *Plaintiff's Brief*, Exhibit 12 at 3. Customs further held that "[p]ursuant to subheading 9903.23.00, [HTSUS], veal … is subject to a general rate of duty of 100 percent ad valorem if the article is a product of a member country of the EU." *Id.* On March 14, 1995, the Director of the Commercial Rulings Division of Customs responded to plaintiff's arguments against the increased duty rate by concluding that the 100% duty imposed on boneless veal was appropriate. *Plaintiff's Brief*, Exhibit 9.

On March 27, 1995, pursuant to 19 U.S.C. §§ 1514, 1515 (1988 & Supp. V 1993), plaintiff timely filed Protest No. 280995–100425 contesting the classification of entries of boneless veal imported through the port of San Francisco from The Netherlands between December 30, 1994 and March 17, 1995, which Customs reliquidated under subheading 9903.23.00, HTSUS.[1]

On April 7, 1995, before Customs decided the protest at issue, plaintiff applied to the Court for a temporary restraining order and a preliminary injunction. The Court issued a temporary restraining order on April 13, 1995. However, after a full hearing held on April 25, 1995, the Court dissolved the temporary restraining order and dismissed the action for lack of subject matter jurisdiction because of plaintiff's failure to exhaust administrative remedies. *Foodcomm International, Inc. v. United States,* 19 CIT ——, 886 F.Supp. 35 (Apr. 28, 1995).

On May 23, 1995, Customs denied Protest No. 280995–100425 and this action ensued. Customs classified the merchandise at issue pursuant to the following HTSUS heading:

Articles the product of the European Community ( … the Netherlands …):

| | | |
|---|---|---|
| 9903.23.00 | Beef, without bone (except offal), fresh, chilled, or frozen (provided for in subheading 0201.30.60 or 0202.30.60) | 100% |

---

Plaintiff argues that Customs' classification is wrong and believes the merchandise should be classified under subheading 0201.20.6000, HTSUS, as follows:

| | |
|---|---|
| 0201 | Meat of bovine animals, fresh or chilled: |
| 0201.10.00 | Carcasses and half-carcasses |
| | . . . |

---

**1.** By an Order issued by the Court on July 17, 1995, eleven entries were severed from the Summons due to the failure of plaintiff to pay duties on those entries.

| | | |
|---|---|---|
| 0201.20 | Other cuts with bone in: | |
| | Processed: | |
| 0201.20.20 | High-quality beef cuts | |
| 0201.20.40 | Other | |
| 0201.20.60 | Other | |
| 0201.30 | Boneless: | |
| | Processed: | |
| 0201.30.20 | High-quality beef cuts | |
| 0201.30.40 | Other | |
| 0201.30.60 | Other ........................................ | 4.4¢/kg |

---

## Discussion

■ On a motion for summary judgment, it is the function of the court to determine whether there remain any genuine issues of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the Court determines that no genuine issue of material fact exists, summary judgment is properly granted when the movant is entitled to judgment as a matter of law. *See Mingus Constructors, Inc. v. United States*, 812 F.2d 1387 (Fed.Cir.1987). The meaning of a tariff term is a question of law to be decided by the court, whereas the determination of whether a particular article fits within that meaning is a question of fact. *Hasbro Indus., Inc. v. United States*, 879 F.2d 838, 840 (Fed.Cir.1989). In the case at bar, this Court finds that there are no genuine issues of material fact, the dispositive issues to be resolved are legal in nature and, therefore, summary judgment is proper.

■ Pursuant to 28 U.S.C. § 2639(a)(1) (1988), tariff classifications made by Customs are presumed to be correct and the burden of proving that the assigned classification is erroneous is upon the challenging party. *See, e.g., Nippon Kogaku (USA), Inc. v. United States*, 69 CCPA 89, 92, 673 F.2d 380, 382 (1982). To determine whether the party challenging Customs' classification has overcome the statutory presumption of correctness, the Court must consider whether "the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed.Cir. 1984).

■ When a tariff term is not clearly defined in either the HTSUS or its legislative history, the correct meaning of the term is generally resolved by ascertaining its common and commercial meaning. *W.Y. Moberly, Inc. v. United States*, 924 F.2d 232, 235 (Fed.Cir.1991). In order to determine the common meaning of a tariff term, the court may rely on its own understanding of the term, as well as consult dictionaries, lexicons and scientific authorities. *Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 789 (Fed.Cir.1988), *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988).

Plaintiff presents five arguments in support of its contention that the term "beef" is not inclusive of veal. Plaintiff's first argument is that based upon common meaning, the definitions of beef and veal are mutually exclusive and, therefore, it is impossible for a single cut of meat to be both beef and veal. *Plaintiff's Brief* at 10–12. Next, plaintiff asserts that the tariff schedule uses the terms beef and veal to refer to separate and distinct meats. *Id.* at 12–14. According to plaintiff, the terms "beef" and "veal" are never used concurrently in the HTSUS. Plaintiff points out that the HTSUS uses the phrase "*meat* of bovine animals" to encompass both beef and veal. *Id.* at 13–14 (emphasis added). Plaintiff's third contention is that the regulations of the United States Department of Agriculture demonstrate that the USDA does not consider the term "beef" to encompass veal. *Id.* at 14–17. In support of its argument, plaintiff emphasizes that the USDA uses different standards to grade veal and beef. In addition, plaintiff highlights that under USDA regulations it is illegal to mislabel beef as veal or vice-versa. *Id.* at 15 (relying on 9 C.F.R. § 317.8(b)(12)). Fourth, plaintiff maintains that the United States

Trade Representative intended to exclude veal from the list of products for imposition of retaliatory tariffs against the EU. *Plaintiff's Brief* at 17–20. Finally, plaintiff submits that common sense dictates that beef and veal are different. *Id.* at 20.

In addition, plaintiff rejects defendant's assertion that the proviso "as provided for in 0201.30.60" contained in item 9903.23.00, HTSUS, means that all the items in subheading 0201.30.60, HTSUS, are considered "beef without bone." Plaintiff submits that "boneless veal" fits into the subheading proviso but not into the words of the tariff item and, therefore, was not meant to be covered by the retaliatory tariffs in the Proclamation. *Plaintiff's Brief* at 21–22.

Defendant responds that subheading 9903.23.00, HTSUS, imposes a 100% *ad valorem* duty on boneless meat from cattle of any age or sex. *Defendant's Memorandum in Support of Cross–Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Brief")* at 8–11. Defendant insists that subheading 9903.23.00, HTSUS, encompasses all merchandise listed under subheading 0201.30.60, HTSUS. *Defendant's Brief* at 13. In support of its position, defendant submits that subheading 0201.30.60, HTSUS, referred to in subheading 9903.23.00, HTSUS, includes meat of all bovine animals. *Id.* at 13–14.

Defendant further maintains that the underlying purpose of the Proclamation supports a broad interpretation of the merchandise included thereunder. *Id.* at 15–17. Defendant emphasizes that the purpose of the Proclamation is to encourage the EU to discontinue its unfair trade practice of restricting its markets to U.S. exports. *Id.* at 15. Defendant submits that if the Court adopts plaintiff's interpretation of the Proclamation, "it will undermine the Government's trade policy and help ensure that European markets remain unfairly restricted and encourage the [EU] and other governments to establish false 'health restrictions' to protect domestic producers from import competition." *Id.* at 15–16.

Defendant also argues that common sense supports its contentions. *Id.* at 17–18. De-

fendant suggests that "meat from one type of animal should be classified with other meat from the same animal regardless of when the animal was born." *Id.* at 18.

The Proclamation imposes a 100% *ad valorem* duty on the following: "Beef, without bone (except offal), fresh, chilled, or frozen (provided for in subheadings 0201.30.60 and 0202.30.60)." *Proclamation*, 52 Fed.Reg. at 49,133. Thus, the Proclamation clearly uses the more narrow term "beef" instead of the broader term "meat." If the President had chosen to use the phrase "meat, without bone," Customs would clearly be able to impose the retaliatory duty on veal. However, the phrase used in the Proclamation is "beef, without bone" and, therefore, the central issue in this case is whether the term "beef" encompasses veal.

▮▮▮ The Court finds that there is no clearly stated Congressional intent as to the meaning of the tariff term "beef." As such, the Court must construe the tariff term according to its current common and commercial meaning. *See K. Nakamoto v. United States*, 9 Cust.Ct. 659, 662, R.D. 5743 (1942). To do so, this Court has consulted various lexicons, dictionaries and other reliable information sources for the common and commercial meaning of the term "beef." *See Brookside Veneers*, 847 F.2d at 789.

"Beef" is defined as follows:

1: the flesh of a steer, cow, or other *adult* bovine animal when killed for food . . . 2a . . . an ox, cow, or bull in a *full-grown or nearly full-grown state; esp:* a steer or cow fattened for food . . .

*Webster's Third New International Dictionary, Unabridged* 196 (1993) (emphasis added). The defendant cites the *McGraw–Hill Dictionary of Scientific and Technical Terms* 199 (4th ed. 1989), which defines beef as "[t]he flesh of a bovine animal, such as a cow or steer, used as food." "Cow" is defined as "[a] domestic bovine of any sex or age. . . . A mature female cattle of the genus *Bos*." *McGraw–Hill* at 447. Defendant argues that the definition of cow contained in *McGraw–Hill* supports its contention that beef and veal are the same. However, in *Geier & Geier, Inc. v. United States*, 13

Cust.Ct. 33, 36, C.D. 865 (1944), the court used the following definition as the accepted common meaning of beef: " 'The flesh of a slaughtered steer, cow, or other adult bovine animal.... Any adult bovine animal; especially, a steer, cow, or bull fattened, or to be fattened for the butcher' " (quoting *Funk & Wagnalls New Standard Dictionary of the English Language* ). This definition was also accepted by the court in *Rael Schechter v. United States,* 16 Cust.Ct. 157, 160–61, C.D. 1004 (1946), in addition to the definition provided by *Webster's New International Dictionary.* Furthermore, in *Rael Schechter,* the court cited the definition of beef from the USDA as being "meat derived from cattle nearly one year of age, or older." 16 Cust.Ct. at 161. In light of these precedents, the Court accepts the definition of beef given in *Webster's Third New International Dictionary.* As such, the term "beef" does not include veal which is defined as follows: "1: calf; *esp:* one suitable for or used for food 2: the flesh of a calf a few days to 12 or 14 weeks of age." *Webster's Third New International Dictionary* at 2,537. Since veal is the flesh of a calf as opposed to the flesh of an adult bovine animal, the term "beef" does not encompass veal.

Plaintiff cites the regulations of the USDA as another reliable source for the determination of the common meaning of "beef." The Court notes that "it is settled that the definition of a term contained in a statute or regulation dealing with *non-tariff* matters ... does not determine the common meaning of that term for *tariff* purposes." *Int'l Spring Mfg. Co. v. United States,* 85 Cust.Ct. 5, 8, C.D. 4862, 496 F.Supp. 279, 282 (1980), *aff'd,* 68 CCPA 13, C.A.D. 1257, 641 F.2d 875 (1981). *See also United States v. Mercantil Distribuidora,* 43 CCPA 111, 116, C.A.D. 617, 1956 WL 8351 (1956). However, the present case is distinguishable since the USDA definition of beef contained in its regulations is consistent with the definitions in the dictionaries consulted by the Court. Thus, while the regulations do not control the determination of the common meaning of "beef" for tariff purposes, they provide support for the previously cited definition of

"beef" accepted by the Court. *See supra* 552–553.

The USDA regulations clearly differentiate between beef and veal as indicated by 7 C.F.R. § 54.113 (1995), entitled "Differentiation between veal, calf, and beef carcasses" and providing the following guidelines for distinguishing between veal and beef:

> Differentiation between veal, calf, and beef carcasses is made primarily on the basis of the color of the lean, although such factors as texture of the lean; character of the fat; color, shape, size, and ossification of the bones and cartilages; and the general contour of the carcass are also given consideration. Typical veal carcasses have a grayish pink color of lean that is very smooth and velvety in texture and they also have a slightly soft, pliable character of fat and marrow, and very red rib bones.... *Carcasses with evidence of more advanced maturity than described in this paragraph are classified as beef.*

(Emphasis added). The cited regulation indicates that the maturity of the animal is the distinguishing characteristic between beef and veal. This distinction is consistent with the definition of beef contained in *Webster's Third New International Dictionary.* It is also significant that the USDA applies different grade standards to veal than to beef. *Compare* 7 C.F.R. § 54.115 *and* 7 C.F.R. § 54.104. The decision of the USDA to treat beef as separate and distinct meats, while not dispositive of the issue, suggests that the common definition of "beef" is not inclusive of veal.

Common sense also supports plaintiff's position. In *Rael Schechter,* 16 Cust.Ct. at 162, the court distinguished between carcass beef and boneless beef by noting that "[o]ne would not be a good delivery for an order of the other." This statement applies to the present case as a delivery of beef would certainly not be an acceptable replacement for an order of veal. Defendant attempts to blur the distinctions between beef and veal by stating that "[o]ne meat is slightly pinker or grayer than another, or has a slightly different appearance of its fat." *Defendant's Brief* at 10–11. In reality, the differences between beef and veal are far less subtle than defendant suggests. If a customer in a restaurant ordered veal and received beef,

the customer would immediately notice the mistake, if not by the appearance of the meat, then by the taste. Merely because a calf would grow to be a cow if it were not slaughtered does not mean that a calf is a cow. Calves that are slaughtered for veal purposes are usually from eight to twelve weeks old and subsist almost entirely on their mothers' milk. *See Plaintiff's Reply to Defendant's Memorandum in Support of Cross–Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment,* Exhibit 2. The tender age and restricted diet of a calf slaughtered for veal purposes naturally distinguishes it from older calves or cows fattened with grass and grain. The result of the difference in age and diet, as evidenced by the USDA regulations, is a meat with less fat and a distinctive color.

▇▇▇ In sum, the Court agrees with plaintiff that the term "beef" is not inclusive of veal. If the government intended to impose retaliatory tariffs on veal in addition to beef, the phrase "meat, without bone" should have been used. Since the Proclamation uses the phrase "beef, without bone," and plaintiff has demonstrated that the common and commercial meaning of the term "beef" is not inclusive of veal, the Court concludes that Customs improperly classified the imports of boneless veal from The Netherlands under subheading 9903.23.00 of the HTSUS.

### Conclusion

For the foregoing reasons, this Court finds that plaintiff has overcome the presumption of correctness attached to Customs' classification of the subject merchandise under subheading 9903.23.00 of the HTSUS and has demonstrated that fresh or chilled boneless veal from The Netherlands is properly classifiable under subheading 0201.30.6000 of the HTSUS. Customs is hereby ordered to reliquidate the subject merchandise under subheading 0201.30.6000 of the HTSUS and to refund all excess duties with interest as provided by law.

### JUDGMENT

This case, having been duly submitted for decision, and the Court, after due delibera-

tion, having rendered a decision herein; now, in accordance with said decision it is hereby

**ORDERED** that plaintiff's motion for summary judgment is granted; and it is further

**ORDERED** that defendant's motion for summary judgment is denied; and it is further

**ORDERED** that the classification of the subject merchandise by the United States Customs Service under subheading 9903.23.00 of the HTSUS is reversed; and it is further

**ORDERED** that the United States Customs Service shall reliquidate the subject merchandise solely under subheading 0201.30.6000 of the HTSUS, and without classification under subheading 9903.23.00 of the HTSUS, and shall refund all excess duties with interest as provided by law.